Louis B. Heller, J.
Petitioners, Sands Point Academy and Country Day School, a private school for intellectually gifted children located in Sands Point, Nassau County, and the parents of certain children attending the school, seek judgment directing the .respondent Board of Education of the City of New York to provide free bus transportation to all Sands Point students who reside in New York City or, in the alternative, to provide such transportation to them from one or more collection points in Queens County which are within 10 miles of Sands Point.
Petitioners also requested that the Board of Education be directed to furnish them with a list of all schools outside the New York City limits to which free transportation is provided by respondent for children residing in New York City.
*277 I wrote an interim decision dated February 17, 1970 directing the respondent to furnish petitioners with a list of all schools outside the city limits to which free transportation is provided by the Board of Education for children residing in New York City. Respondent, pursuant to my directive, furnished such a list, consisting of 10 schools. The road distance from the city line to the school the furthest from such line is 3.97 miles; three schools on the list are approximately % mile from the city line. Sands Point Academy is 8.69 miles from the city line.
Respondent refuses to provide transportation, on the sole ground that any new bus route to be established for petitioners’ benefit would exceed 5 miles, which is the maximum distance of a bus route under a long-established policy of the Board of Education. It should be emphasized that the pupils involved in this litigation are normal children. A different rule pertains to the transportation of the physically handicapped, emotionally disturbed or children with retarded mental development.
Prior to 1942, respondent Board of Education established the policy of limiting all school bus routes to 5 miles. This distance is measured from the first pick-up point through intermediate stops to the school. This policy has never varied and respondent now has contracts for 1,194 free school bus routes.
School bus contracts are awarded by competitive bidding. Before a contractor can submit a bid on a particular route, he must know the length of the trip, traffic and road conditions, the number of stops to be made, etc., before he can determine how long it will take his bus driver to complete the route twice each school day. Hourly salary of the bus driver, gasoline, normal wear and tear on bus, and time involved, are factors that determine the cost of operation and the amount of the bid. If the route is longer and takes more time to complete, naturally, the bid will be higher.
In submitting the bid the contractor must also know how many routes the same bus can complete in the same morning. Usually a bus covers two or three routes each school day. The longer the route, the higher the transportation cost to the Board of Education. For purposes of economy the Board of Education decided in 1942 to limit all school bus routes to 5 miles. That policy has not changed to date.
Sands Point Academy is universally recognized as one of the most important centers for the education of gifted children. The accolades heaped upon the school and its exceptional faculty and administrators by members of Congress have a hollow ring when their acclaim is not accompanied by the financial support this extraordinary center of learning deserves. The current *278 session of Congress has passed and the President has signed the “ Grifted and Talented Children Educational Assistance Act.” I read the act, a copy of which is attached to the moving papers. Section 4 of the act states:
“ (a) The Commissioner of Education shall:
“ (1) determine the extent to which special educational assistance programs are necessary or useful to meet the needs of gifted and talented children,
“ (2) show which existing Federal educational assistance programs are being used to meet the needs of gifted and talented children,
“ (3) evaluate how existing Federal educational assistance programs can be more effectively used to meet these needs, and “ (4) recommend which new programs, if any, are needed to meet these needs.
“ (b) The Commissioner shall report his findings, together with his recommendations, to the 'Congress not later than one year after the enactment of this Act.”
I was hoping, and looked in vain, to see the proposed program implemented by an appropriation of, say, a hundred million dollars to provide for the needs of our most precious natural resource, our gifted and talented young people.
The irony of the situation is that the superannuated chairmen of Congressional committees do not bat an eyelash while pouring untold billions (I use “untold” advisedly) into the endless Indochinese rathole. A reassessment of our national priorities should be the first order of the day.
The simple fact is that the City of New York is in the midst of a financial crisis. There is talk again, as in the late unlamented ’30’s, of payless furloughs for city employees, and vacancies on civil service lists for essential municipal services are not being filled. The Board of Education has been compelled to curtail many of its programs because of budgetary limitations.
Article 52 (§§ 2550-2586) of the Education Law applies to city school districts. Under the applicable statute (Education Law, § 2554, subds. 18,19, 20) a city school district is not required to transport normal children. Accordingly, respondent district, as a city school district, is not required to provide transportation (Matter of Smith v. City School Dist., City of Syracuse, 3 Ed. Dept. Rep. 232 [1964]). However, since respondent board “in its judgment” does provide some transportation, it may establish minimum and maximum distances and such transportation must apply to all children in like circumstances (Matter of Smith, supra). In Matter of Brown v. Allen (23 A D 2d *279 591) the court said: “ There is little room for argument that a child, attending any school outside the district, is not in like circumstances to a child attending a school within the .district. ’ ’
The action of a school board in laying out routes and measuring same is a matter of discretion with such board (Matter of Knopp v. Board of Educ., Town of Tonawanda, 4 Ed. Dept. Rep. 34) and the action of a district may not be disturbed unless there is clear evidence that it is arbitrary and unreasonable.
In view of the outstanding accomplishments of Sands Point Academy, it is most regretfully that I deny petitioners’ application. Respondent’s refusal to supply free bus transportation beyond the 5-mile limit from the city line is not arbitrary, capricious or unreasonable.